UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRIENDS OF THE FRANK J. WOOD BRIDGE, NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES, and THE HISTORIC BRIDGE FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>ELAINE CHAO, SECRETARY OF THE U.S. DEPARTMENT OF TRANSPORTATION,<br><br>NICOLE R. NASEN, ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION,<br><br>TODD JORGENSEN, ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION, MAINE DIVISION, and<br><br>BRUCE VAN NOTE, COMMISSIONER OF THE MAINE DEPARTMENT OF TRANSPORTATION,<br><br>Defendants. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. This is an action for declaratory and injunctive relief against further planning, acquisition of right-of-way, financing, contracting, or construction by Defendants of a new two-lane bridge carrying US 201 and ME 24 over the Androscoggin River between the Towns of Brunswick and Topsham, Maine ("Bridge Project"), to replace the historic Frank J. Wood Bridge, which would be demolished following construction of the new bridge.

2. Plaintiffs Friends of the Frank J. Wood Bridge, National Trust for Historic Preservation in the United States, and The Historic Bridge Foundation bring this action to challenge the

decision of Defendants to reject the feasible and prudent alternative of rehabilitating the historic Frank J. Wood Bridge, an alternative that Defendants acknowledge would satisfy the purpose and need for the Bridge Project.  Defendants' decision was based on inaccurate and inconsistent data regarding the relative costs of the bridge rehabilitation versus building a new replacement bridge, which vastly over-estimates the long-term costs associated with maintaining the rehabilitated bridge over its service life and underestimates the long-term costs of maintaining the new bridge over its service life. This inaccurate and inconsistent data improperly taints the consideration of alternatives that would avoid or minimize harm to the historic Frank J. Wood Bridge, in violation of Section 4(f) of the Department of Transportation Act ("Section 4(f)"), 49 U.S.C. § 303(c); 23 U.S.C. § 138(a); and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370d. Defendants' approval of the new replacement bridge, and the removal and destruction of the historic Frank J. Wood Bridge, violates Section 4(f) and NEPA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331(a), 28 U.S.C. §§ 2201-2202, 28 U.S.C. § 1361, and 5 U.S.C. §§ 701-706.  Venue is proper in this district under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

## PARTIES

4. Plaintiff Friends of the Frank J. Wood Bridge is a nonprofit organization formed in 2016 under the laws of Maine in response to the threatened destruction of the historic Frank J. Wood Bridge by Defendants.  Its mission is to advocate for the rehabilitation of the Frank J. Wood Bridge ("Bridge"). Plaintiff Friends of the Frank J. Wood Bridge brings this action on behalf of itself and its adversely affected members.

5. Friends of the Frank J. Wood Bridge ("Friends") and its members have been actively involved in community organizing and administrative advocacy to secure adequate consideration of the feasible and prudent alternative of rehabilitating rather than demolishing the historic Frank J. Wood Bridge. Friends was a consulting party for the Bridge Project under Section 106 of the National Historic Preservation Act ("Section 106"), 54 U.S.C. § 306108.

6. Plaintiff National Trust for Historic Preservation in the United States ("National Trust") is a private charitable, educational, non-profit corporation chartered by Congress in 1949 to protect and defend America's historic resources, to further the historic preservation policy of the United States, and to "facilitate public participation" in the preservation of our nation's heritage.  54 U.S.C. § 312102(a). The National Trust is headquartered in Washington, D.C., and has six regional and two field offices around the country, as well as 23 historic sites open to the public.  With more than one million members and supporters around the country, the National Trust works to protect significant historic sites and to advocate historic preservation as a fundamental value in programs and policies at all levels of government.

7. By statute, the Chairman of the National Trust is a member of the Advisory Council on Historic Preservation, an independent federal agency whose duties include implementation and enforcement of the National Historic Preservation Act.  *See id.* §§ 304101(8), 304108(a).  The statutory powers of the National Trust include the power to bring suit in its corporate name. *Id*. § 312105(c).  The National Trust has participated in scores of cases against federal agencies seeking to enforce federal historic preservation laws, including Section 4(f) and NEPA.

8. The National Trust participated actively in the Section 106 consultation process for the proposed Bridge Project, beginning in April 2018.

9. Plaintiff The Historic Bridge Foundation ("Foundation") is a nonprofit 501(c)(3) organization incorporated in the state of Texas in 1998 to serve as a national advocacy organization for the preservation of historic bridges throughout the United States. The Foundation has participated in hundreds of Section 106 reviews to advocate for the preservation of historic bridges, and the Foundation was a consulting party involved in the Section 106 review for the Frank J. Wood bridge, pursuant to 36 C.F.R. §§ 800.2(c)(5) and 800.3(f).

10. The individual members of Friends of the Frank J. Wood Bridge and the National Trust reside near the historic Frank J. Wood Bridge, have been actively involved in community organizing and administrative action to secure adequate consideration of alternatives that do not involve the destruction of the historic Frank J. Wood Bridge and other adverse impacts to nearby historic and environmental resources.  These members have for years used, enjoyed, and appreciated the historic Frank J. Wood Bridge, and intend to continue to do so, including studying and appreciating its history and architecture.  Their interests in preserving and protecting this historic bridge will be harmed by the proposed action.

11. The interests of Friends of the Frank J. Wood Bridge, the National Trust, and The Historic Bridge Foundation are within the zone of interests intended to be protected by Section 4(f) and NEPA.  The interests of the Plaintiffs and their members are and will continue to be aggrieved and adversely affected by the actions of Defendants complained of herein.  Neither the claims asserted herein, nor the relief requested, requires the participation of individual members of the Plaintiff organizations in this lawsuit.

12. Given their interest in and advocacy on behalf of protecting this historic bridge, Plaintiffs have a strong interest in ensuring that Defendants comply with the mandates of Section 4(f) and NEPA.  Plaintiffs and their members have suffered and will continue to suffer injury in fact due to the Defendants' current and prospective failure to comply with Section 4(f) and NEPA, unless the relief sought here is granted.

13. Defendant Elaine Chao is named here solely in her official capacity as Secretary of the United States Department of Transportation.  In that capacity, Defendant Chao is responsible for the administration, operations, and activities of the Department of Transportation, including the Federal Highway Administration ("FHWA"), and for the agency's compliance with NEPA and Section 4(f).

14. Defendant Nicole R. Nasen is named here solely in her official capacity as Administrator of the FHWA.  In that capacity, Defendant Nasen is responsible for the administration, operations, and activities of the FHWA, and for the agency's compliance with federal laws, including NEPA and Section 4(f).

15. Defendant Todd Jorgenson is named here solely in his official capacity as the Administrator of the Maine Division of the FHWA.  In that capacity, Defendant Jorgenson is responsible for carrying out the NEPA and Section 4(f) reviews for the Bridge Project.

16. Defendant Bruce Van Note is named here solely in his capacity as Commissioner of the Maine Department of Transportation ("Maine DoT").  In that capacity, Defendant Van Note is responsible for the design and construction of the proposed new bridge over the Androscoggin River between the Towns of Brunswick and Topsham, Maine, and for the maintenance and repair of Maine's existing bridges. He has actively solicited federal

funding for the Bridge Project and has worked in partnership with the FHWA in developing and selecting the alternative of building a new bridge to replace the historic Frank J. Wood Bridge as a joint state and federal project.

FACTS

17. The Frank J. Wood Bridge ("the Bridge") is a contributing resource to the Brunswick Topsham Industrial Historic District ("BTIHD"), and the Bridge has also been determined to be individually eligible for listing in the National Register of Historic Places.

18. The Bridge was constructed in 1932 and consists of an 805-foot-long, three-span steel through-truss bridge supported by concrete abutments and two concrete piers. The travel way through the truss is 30 feet wide, with two 11-foot-wide travel lanes and two 4-foot-wide shoulders.  The Bridge carries an average of 19,000 vehicles per day, and is one of three vehicular bridges crossing the Androscoggin River, the nearest of which is the Route 196 Bypass bridge, located one-half mile downstream.

19. The Bridge supports pedestrian traffic via a sidewalk on the western side of the Bridge. The Bridge has two four-foot-wide shoulders, each consisting of two feet of pavement and two feet of open grate, which limits bicycle traffic.

20. The environmental review process for the Bridge Project was initiated by the Defendants in 2014, and various scoping and public meeting activities took place between 2014 and 2016. The primary purpose of the Bridge Project is to address structural conditions and load capacity issues on the Bridge.

21. A draft Environmental Assessment ("Draft EA") and Section 4(f) Evaluation ("Draft 4(f) Evaluation") was circulated for public comment in February 2018.  The Draft EA

identified five alternatives, in addition to "no build": Rehabilitation Alternative 4 (adding a new pedestrian sidewalk on the east side of the bridge); a less costly Rehabilitation Alternative 3 (retaining the current configuration of a single sidewalk on the west side of the Bridge); and three bridge replacement alternatives (two on new alignments and one on the existing alignment), requiring demolition of the historic Bridge.  Each of the five alternatives were found to meet the purpose and need for the Bridge Project by addressing the structural condition and load capacity issues of the Bridge, and each of the alternatives was determined to improve bicycle mobility by including four-foot-wide paved shoulders on both sides of the bridge.

22. The Draft EA identified the Bridge Replacement Alternative 2 (replacing on an upstream alignment) as the preferred alternative.  The preferred alternative was determined to have an adverse effect on the Frank J. Wood Bridge, and to result in the permanent adverse effect and use of the BTIHD, and to adversely affect other historic properties as well – the Cabot Mill and the Pejepscot Paper Company.

23. While under the Rehabilitation Alternatives, the Bridge would remain "fracture critical," these alternatives would enable the Bridge to carry mandated loads, and these alternatives were specifically determined by Defendants to meet the purpose and need for the Bridge Project.  Both Rehabilitation Alternatives were determined to have no adverse effect or no effect on identified historic resources and would avoid the use of Section 4(f) resources.

24. Both Rehabilitation Alternatives would have included the construction of a temporary bridge to accommodate traffic during construction, despite the fact that there is a vehicular crossing a half-mile downstream, which would have involved a delay of less

than ten minutes.

25. In comments on the Draft EA and Draft 4(f) Evaluation, Friends of the Frank J. Wood Bridge presented reports from two consultants with substantial expertise in bridge construction, rehabilitation, and restoration -- JDB Consulting Engineers, Inc. ("JDB Report") and Robert Shulock, PE ("Shulock Report"). Among other things, these experts provided a specific criticism of the construction, life service, and life-cycle cost assumptions assigned to the Rehabilitation Alternatives and the Replacement Alternatives in the Draft EA and Draft 4(f) Evaluation and supporting documents. These experts asserted that the Draft EA and Draft 4(f) Evaluation relied on inaccurate cost estimates to compare the service-life costs of the Replacement versus Rehabilitation Alternatives, and that those inaccurate assumptions over-estimated the service-life costs of the Rehabilitation Alternatives and underestimated the service-life costs of the Replacement Alternatives.

26. The JDB Report identified three options, Options 1, 2 and 3, and concluded that Option 1 is the most "cost-effective" option to "provide an economically viable and safe bridge crossing." JDB Option 1 is essentially the same as Rehabilitation Alternative 3, except that Option 1 would not include construction of a temporary bridge. Instead, Option 1 provides for a temporary detour for vehicles while the historic Bridge is being rehabilitated. The JDB Report estimated that the construction costs of Option 1 would be $13.5 million, and that the full life-cycle service costs over 100 years would be $4 million, including the cost of painting the steel superstructure every twenty years and resurfacing the deck twice over 100 years. JDB Report, at 5. Thus, the total project cost for Option 1 over 100 years would be $17.5 million, comparable to the costs of the

FHWA's preferred Replacement Alternative 2. *Id.*

27. The Shulock Report determined that the $4 million temporary bridge was unnecessary, given the nearby crossing of the river just a half-mile away. Instead, the Shulock Report determined that existing traffic could be accommodated by a $1 million construction detour. The Shulock Report also determined that the life-cycle and life-service cost estimates supporting the Draft EA and Draft 4(f) Evaluation were inaccurate by unnecessarily increasing the frequency of painting and deck replacement over the service life of the Rehabilitation Alternatives, while improperly and inconsistently reducing the frequency of these maintenance measures and necessary inspections under the Replacement Alternatives.

28. The Draft EA also inflated the costs of painting the Bridge over its 75-year service life, providing estimates (Draft EA, at pp. 23-24) that were 48 times higher than the actual painting costs incurred by Maine DoT in 2016 during the rehabilitation of the Bernard Lown Peace bridge in Lewiston and Auburn, Maine, a bridge which is even larger than the Frank J. Wood Bridge. *See* https://www.maine.gov/tools/whatsnew/index.php?topic=DOT_projects&id=774284&v=full-archive-2016.

29. The Shulock Report concluded that the cost of Rehabilitation Alternative 3 with those changes and corrections would be comparable to the cost of replacing the bridge (the FHWA preferred alternative).

30. On December 21, 2018, the federal Advisory Council on Historic Preservation ("ACHP"), in its statutory rule under Section 106 of the NHPA, issued a comment letter, pursuant to 36 C.F.R. § 800.7(b), criticizing the FHWA's inadequate consideration of

alternatives that would avoid and minimize harm to historic properties. Among other things, the ACHP highlighted the following inadequacies:

   a. FHWA improperly failed to initiate consultation under Section 106 until after selecting the preferred alternative;

   b. FHWA selected a contractor for its environmental evaluation that had a bias toward new construction based on a conflict of interest;

   c. FHWA failed to adequately consider the adverse visual effects of the Bridge Project on the adjacent Summer Street Historic District, which could have led to the selection of a different preferred alternative; and

   d. FHWA failed to comply with the requirement under 36 C.F.R. § 800.5(c)(2)-(3) that disagreements about potential adverse effects on historic properties, including the dispute about effects on the Summer Street Historic District, must be referred to the ACHP for resolution.

31. The Final Environmental Assessment ("Final EA") and Final Section 4(f) Evaluation (Final 4(f) Evaluation") for the Bridge Project were issued in February 2019. The Final EA and Final 4(f) Evaluation continued to acknowledge that both of the Rehabilitation Alternatives (Alternatives 3 and 4) would meet the purpose and need of the Bridge Project. Final 4(f) Evaluation, at 12: Final EA, Appendix 1, Matrix of Alternatives. However, the Final 4(f) Evaluation concluded that the Rehabilitation Alternatives were not feasible and prudent due to "Service Life Cost of extraordinary magnitude." Final 4(f) Evaluation, at 13, 14-15; Final EA, at 67.

32. Specifically, the Final EA and Final 4(f) Evaluation estimated the total cost over the service life of the bridge to be $17.3 million, whereas Rehabilitation Alternatives 2 and 3

were estimated to involve total service life costs of $38.2 million and $35.2 million, respectively. See Final EA, at 32; Final 4(f) Evaluation, at 23-24.  However, in addition to the inconsistencies cited above, these estimates failed to allocate any cost for contingencies in the Replacement Alternatives, while including a 15% contingency to the the cost of the Rehabilitation Alternatives.  Final EA, at 31.

33. The Final EA and Final 4(f) Evaluation did not respond to the comments made by the JDB and Shulock Reports concerning the inaccuracies and inconsistencies in the estimates of the life service/life cycle costs attributed to the Rehabilitation and Replacement Alternatives.

34. The Final EA acknowledges that the Replacement Alternatives may result in potential impacts to the fish passage at the Brunswick Hydroelectric Dam, which is within the Frank J. Wood Bridge project area, by foreclosing measures to modify the placement of this structure at the time of relicensing of the Brunswick Dam in 2029.  Final EA at 25, 57-58.  However, the FHWA refused to evaluate these potential future impacts on the fish passage, finding that they were speculative and not reasonably foreseeable. Final EA at 61.

35. The Final EA identifies specific mitigation measures to be incorporated into the project to address adverse effects to critical habitat designated for the Gulf of Maine distinct population segment ("DPS") of Atlantic sturgeon.  Final EA at 60-61.  However, the cost of these measures was not included in the project costs for the Preferred Alternative.

36. On March 12, 2019, the FHWA issued a final determination that there were no prudent and feasible alternatives to the selection of Replacement Alternative 2, and a finding that this alternative would have no significant impact on the environment ("Finding of No

Significant Impact" or "FONSI"), and therefore, did not prepare a full Environmental Impact Statement ("EIS") under NEPA.

37. On April 12, 2019, the FHWA published a notice in the Federal Register indicating that any challenges seeking judicial review of this decision would be barred unless filed on or before September 9, 2019.  84 Fed. Reg. 15038 (April 12, 2019).

38. On information and belief, Defendants are now in the process of finalizing the design of the project, and it is Defendants' intention to proceed with letting contracts for the construction of the project as rapidly as possible.

39. Absent equitable relief from this Court, the historic Frank J. Wood Bridge will be removed and irreparably destroyed by Defendants' violations of federal law.  Plaintiffs have no adequate remedy at law and will suffer irreparable and permanent injury if not awarded relief by this Court.

## COUNT I

(Section 4(f) of the Department of Transportation Act)

40. Plaintiffs repeat and reallege the foregoing allegations.

41. Section 4(f) of the Department of Transportation Act provides, in pertinent part, that the Secretary of Transportation:

> *shall not approve* any program or project . . . which requires the use of . . . any land from an historic site of national, State, or local significance as so determined by such officials *unless* (1) *there is no feasible and prudent alternative* to the use of such land, and (2) such program includes all possible planning to minimize harm to such . . . historic site resulting from such use.
>
> 23 U.S.C. § 138(a); *see* 49 U.S.C. § 303(c) (emphasis added).

42.  The Bridge Project requires the "use" of the historic Frank J. Wood Bridge within the meaning of Section 4(f).

43. Rehabilitation Alternative 3 is a prudent and feasible alternative that satisfies the purpose and need for the Bridge Project and would avoid the use of Section 4(f)-protected properties.

44. Defendants' rejection of Rehabilitation Alternative 3 based on the estimated "service life costs" of "extraordinary magnitudes" is arbitrary, capricious, an abuse of discretion, and lacks support in the record.

45. Defendants failed to provide a rational basis for the estimated service life costs for its selected and rejected alternatives, applying different and inconsistent estimates for life-cycle costs to these alternatives that are contrary to the guidelines contained in Maine's own bridge design manual. https://www.maine.gov/mdot/bdg/docs/bpdg/Complete2003BDGwithUpdatesto2018.pdf.

46. Specifically, Maine's bridge design manual provides that a "standard assumption" for estimating "routine maintenance costs" is that these costs should be the same for all alternatives. Maine Bridge Design Guide, Section 2.2.6, at 2-13 (2003, updates to 2018). The only exception noted is for "comparing different structure types such as a buried structure to a traditional bridge." *Id.* Both Alternative 2 and Alternative 3 involve the same bridge structure type.

47. The estimated service-life costs for the Rehabilitation Alternatives included a cost of $1 million to replace the deck every 30 years, while assigning *no* costs for deck replacement in the new bridge alternatives, even though Maine's own bridge design policies require that the decks of *all* bridges be replaced every 50 years. Maine Bridge Design Guide, Table 2-2, at 2-13.

48. Likewise, the Defendants' estimated service-life costs for the Rehabilitation Alternatives

improperly include the cost of painting the Bridge three additional times after the initial rehabilitation over a 75-year life-span, at a cost of $4 million per painting, while adopting an inconsistent estimate that the new bridge would be painted only twice over a 75-year life-span, at a cost of only $1.75 million per painting. There is no rational basis for this inconsistency.

49. Defendants' estimated service-life costs for painting are demonstrably inflated and are contradicted by the recent actual painting costs for the Bernard Lown Peace Bridge – a bridge type similar to the Frank J. Wood Bridge – which incurred a dramatically lower cost per square foot for painting and truss repair, with painting scheduled every 30 years.

50. Defendants' estimated construction costs for Rehabilitation Alternative 3 were improperly inflated by the unnecessary inclusion of a costly temporary bridge based on "user costs" for the minimal delay (under seven minutes) caused by a less-costly detour, despite the fact that Maine's Bridge Design Guide provides that User Costs are assumed to be the same for all alternatives, unless "one alternative has a significant impact on the public over another."  Maine Bridge Design Guide, Section 2.2.6, at 2-13.  It is generally accepted that road user costs are not considered in the case of minor delays (i.e. under 10 minutes). *See*  https://www.michigan.gov/documents/mdot/RC1630_491364_7.pdf.

51. Defendants' construction cost estimate comparisons were also tainted by the inclusion of a 15% contingency for the Rehabilitation Alternatives, while including no contingency whatsoever for the construction costs of the selected alternative.  There is no rational basis for this inconsistency.

52. Defendants violated and continue to violate Section 4(f) by approving the project despite the existence of the feasible and prudent alternative of rehabilitating the Frank J. Wood

Bridge. Accordingly, Defendants should be enjoined from any and all activities in connection with this project that may use the historic Bridge. Unless Defendants are so enjoined, Plaintiffs will be irreparably harmed.

## COUNT II

(National Environmental Policy Act)

53. Plaintiffs repeat and reallege the foregoing allegations.

54. The National Environmental Policy Act (NEPA) requires federal agencies to prepare a detailed statement evaluating the environmental impacts of and alternatives to any proposed "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

55. Section 102(E) of NEPA requires federal agencies to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." *Id.* § 4332(2)(E).

56. NEPA requires that the conclusions reached in environmental documents be supported by accurate data. *See* 40 C.F.R. § 1500.1(b) ("Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA.").

57. The Defendants' failure to include accurate data on the service-life costs of rehabilitating versus replacing the historic Bridge undermines one of the primary reasons for producing the EA: to provide the public with accurate information about federal projects that will impact the environment. The Defendants' reliance on inaccurate data – and the failure to respond to explicit warnings about its inaccuracies -- tainted the required consideration of alternatives and therefore violates NEPA, 42 U.S.C. §§ 4332(2)(C) and (E).

58. In determining whether to prepare an EIS, the agency must consider whether the action would "significantly" affect the human environment. Factors of significance include "[t]he degree to which the effects on the quality of the human environment are likely to be highly controversial;" "[t]he degree to which the action may adversely affect districts, sites, highways, structures, or objects listed in or eligible for listing in the National Register of Historic Places;" and the "[u]nique characteristics of the geographic area such as proximity to historic or cultural resources." 40 C.F.R. §§ 1508.27(b)(3), (4) and (8).

59. The selected alternative of a replacement bridge would have a significant impact on the historic Frank J. Wood Bridge by requiring its removal and would also involve impacts on protected marine species and aquatic habitat, and therefore requires a full EIS.

60. The Defendants violated NEPA by failing to evaluate the reasonably foreseeable impacts of the Bridge Project on the ability to redesign the fish passage at the Brunswick Hydroelectric Dam in future relicensing proceedings to address deficiencies of the current fish passage at that facility.

61. Defendants violated NEPA by failing to respond to the JDB and Shulock expert reports, which demonstrated that the construction and life-service cost estimates assigned by Defendants to Replacement versus Rehabilitation Alternatives were flawed. These expert reports cast substantial doubt on the adequacy of the Defendants' methodology and data, and thus render the Defendants' conclusions highly controversial, requiring a full EIS.

62. The letter from the ACHP demonstrates that the project is highly controversial because of significant criticism by a sister federal agency with special expertise regarding historic resources, and thus an EIS was required.

63. Defendants' finding that the Bridge Project would have no significant impact on the

environment, and that no EIS is therefore required, was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

64. Accordingly, Defendants should be enjoined from any and all activities in connection with this project that may adversely affect environmental, natural, scenic, cultural and/or historic resources until such time as Defendants have fully complied with NEPA. Unless Defendants are so enjoined, Plaintiffs will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1. Declare the obligations and duties of Defendants to comply fully with the requirements of Section 4(f) of the Department of Transportation Act, 23 U.S.C. § 138(a) and the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370d, prior to any further planning, financing, contracting, right-of-way acquisition, or construction of the Bridge Project;

2. Issue injunctive relief directing all Defendants to refrain from any further planning, acquisition of right-of-way, financing, contracting, or construction of the project until Defendants have fully complied with the requirements of NEPA and Section 4(f);

3. Award Plaintiffs their attorneys' fees, costs, and disbursements pursuant to applicable laws, including but not limited to the Equal Access to Justice Act; and

4. Award such other and further relief as the Court may deem appropriate.

Respectfully submitted,


/s/ Sean Mahoney
Sean Mahoney
Maine Bar No. 8661
Phelps Turner
Maine Bar No. 5945
Conservation Law Foundation
53 Exchange Street, Suite 200
Portland, ME  04101
(207) 210-6439
smahoney@clf.org
pturner@clf.org

/s/ Andrea C. Ferster
Andrea C. Ferster
(seeking admission *pro hac vice*)
Attorney at Law
2121 Ward Court, N.W. 5th Fl.
Washington, D.C. 20037
(202) 974-5142
aferster@railstotrails.org


/s/ Elizabeth S. Merritt
Elizabeth S. Merritt
(seeking admission *pro hac vice*)
Deputy General Counsel
National Trust for Historic Preservation
2600 Virginia Ave. NW, Suite 1100
Washington, DC 20037
(202) 297-4133
emerritt@savingplaces.org

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing Complaint for Declaratory and Injunctive Relief was mailed first-class, postage pre-paid, on September 6, 2019, to the following parties/counsel of record:

William Barr
Attorney General
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

Halsey Frank
U.S. Attorney for the District of Maine
United States Attorney's Office
100 Middle Street, East Tower, 6th Floor
Portland, ME 04101

Aaron Frey
Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333

Elaine Chao
Secretary
U.S. Department of Transportation
400 7th Street, S.W.
Washington, D.C. 20590

Nicole R. Nasen
Administrator
Federal Highway Administration
400 7th Street, S.W.
Washington, D.C. 20590

Todd Jorgensen
Division Administrator
Federal Highway Administration
Maine Division
Edmund S. Muskie Federal Building
40 Western Avenue, Room 614
Augusta, ME 04330

Bruce Van Note
Commissioner
Maine Department of Transportation
16 SHS
Augusta, ME 04333-0016

/s/ Phelps Turner
Phelps Turner
Conservation Law Foundation
53 Exchange Street, Suite 200
Portland, ME 04101
(207) 210-6439
pturner@clf.org

20